Sheldon S. Levy, J.
It is not often that a Civil Court Judge in the City of New York will find it necessary to disagree publicly (at least, within the legal community) with a holding of any branch of the Appellate Division. Usually, we are overjoyed to discover an Appellate Division case in point, no matter which Department, and to cite it as controlling or, at least, as persuasive.
In this matter, however, I am constrained to take issue with a recent decision of the Appellate Division, Fourth Department. Moreover, I would hope that, upon appeal, the appellate court in the First Department would support a departmental difference of opinion so that the question can ultimately, but shortly, be resolved in the Court of Appeals.
The subject involved is one basic to the continued health and vitality of the Comprehensive Automobile Insurance Reparations Act (commonly referred to as the "No-fault Insurance Law”). Simply stated, the issue is whether the reasonable and customary charges for physical therapy treatments can be included in the total sum needed to reach the over $500 threshold — the amount required to maintain an action for "non-economic loss”, namely, "pain and suffering and similar non-monetary detriment” (Insurance Law, § 671, subd [3]).
The question is raised by the defendant’s motion, pursuant to CPLR 3211 (subd [a]) and section 1002 of the New York City Civil Court Act, to dismiss the complaint, inter alia, for plaintiff’s failure to comply with minimum statutory and pleading requirements prescribed by the Insurance Law. By virtue of plaintiff’s verified bill of particulars, admittedly acceptable medical charges of $288 have been shown for the cervical sprain and the permanent partial disability involved, including $185 for orthopedic examinations, $88 in hospital bills and $15 for medicines and drugs. Unless an additional $475 for a series of 19 physical therapy treatments, administered under a physician’s prescription and supervision at his office by his nurse, can be, at least initially, legally included towards the mandatory threshold, the plaintiff cannot sustain his complaint and his prospective claim of "serious injury” on this ground.
*205 The pertinent subdivisions of the Insurance Law involved are subdivision 1 of section 671:
" 'Basic economic loss’ means, up to fifty thousand dollars per person:
"(a) all reasonable and necessary expenses incurred for: (i) medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services; (ii) psychiatric, physical and occupational therapy and rehabilitation; (iii) any non-medical remedial care and treatment rendered in accordance with a religious method of healing recognized by the laws of this state; and (iv) any other professional health services; all without limitation as to time, provided that within one year after the date of the accident causing the injury it is ascertainable that further expenses may be incurred as a result of the injury” and subdivision 4 of section 671:
" 'Serious injury’ means a personal injury:
"(b) if the reasonable and customary charges for medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services necessarily performed as a result of the injury would exceed five hundred dollars.”
As stated, the Appellate Division, Fourth Department, has newly determined that "physical therapy bills are not included in medical and hospital bills” (Colenzo v Kernan, 49 AD2d 809, 810). In so doing, however, it merely cited with approval, and apparently relied upon solely, the opinion in Goldwire v Youngs (82 Misc 2d 351).
In the Goldwire case, the court decided that, since the same descriptive words were used in subparagraph (i) of paragraph (a) of subdivision 1 of section 671, in defining a portion of "basic economic loss”, and in paragraph (b) of subdivision 4 of section 671, in defining "serious injury”, the Legislature must have intended to exclude subparagraphs (ii) [psychiatric, physical and occupational therapy and rehabilitation], (iii) and (iv) of paragraph (a) of subdivision 1 from paragraph (b) of subdivision 4 and from the computation of the "serious injury” threshold. The claim is that the Latin maxim Expressio unis est exclusio alterius applies, and that the Legislature by omitting those subparagraphs made a clear exclusion of expenses, such as for physical therapy, from the calculation of medical service charges in reaching the threshold.
I disagree. Latin expressions are frequently beneficially employed, but assuredly only at the proper time and place. In *206 neither law nor logic is there any need to equate, or even to compare, paragraph (b) of subdivision 4 of section 671 with paragraph (a) of subdivision 1 of section 671, as the court in Goldwire did in an attempt to sustain its holding. There is surely no necessity to compare different sections of law promulgated for entirely different purposes. There is absolutely no reason to produce a forced equation to reach a determination certainly not intended by the lawmakers.
As the Court of Appeals recently annunciated in its landmark decision in Montgomery v Daniels (38 NY2d 41) there is a clear and basic distinction between these different provisions of article XVIII of the Insurance Law. "The standard for proof of a claimant’s basic economic loss is 'all reasonable and necessary expenses incurred’, i.e., an individualized standard related to the expenses in fact incurred by the particular plaintiff (§ 671, subd 1, par [a]). The standard for determination of the threshold amount, by contrast, is 'the reasonable and customary charges for * * * services necessarily performed’ (§ 671, subd 4, par [b]; italics supplied), a general standard in the application of which payments actually made by the particular claimant will not be determinative” (Montgomery v Daniels, supra, p 65).
As set forth, the computation of the threshold amount is based "on treatment expenses alone rather than on 'basic economic cost’. To have utilized the latter standard would clearly have been to favor those in higher earned income brackets” (Montgomery v Daniels, supra, p 65).
In all events, the Court of Appeals makes it crystal clear that the one subdivision is entirely different from the other; that the two cannot and should not be compared; and that paragraph b of subdivision 4 of section 671 is to stand on its own and be interpreted as such.
Colenzo, its antecedents and its progeny (see Jackson v Decatur, 83 Misc 2d 295) rely solely upon the claim that " 'physical therapy’ is not among the categories of services set forth in Insurance Law (§ 671, subd 4, par [b]) as includable in the computation of the $500 threshold” (Goldwire v Youngs, supra, p 352). However, the statute plainly does include "the reasonable and customary charges for medical * * * services * * and the practical, or dictionary, definition of medical services surely encompasses physical therapy. Accordingly, when Goldwire holds that physiotherapy is "nonmedical” treatment, it flies directly into the countenance of both the *207 usual definition of medical services and of the legal definition of "medical expense” set forth in section 65.1 of title 11 of the Official Compilation of Codes, Rules and Regulations of the State of New York. This terminology was mandatorily added by the Department of Insurance as a part of the "Regulation Implementing the Comprehensive Automobile Insurance Act”, the very legislation here involved and which Colenzo, Gold-wire, et alii seek to restrict and abort.
Specifically, "psychiatric, physical and occupational therapy and rehabilitation” fall squarely within the ambit of "medical expense” (11 NYCRR 65.1 [d] [2]). Moreover, "any other professional health services” also are included in the explicit definition of "medical expense” (11 NYCRR 65.1 [d] [4]) and are further defined to involve those services "that are required or would be required to be licensed by the State of New York if performed within the State of New York * * * * Reasonable charges for the services shall be covered and the services need not be initiated through referral by a treating or practicing physician” (11 NYCRR 65.6 [n] [1] [ii]).
With these plain definitions of "medical expense” implementing the entire subject statute, not merely one section or a part of it, it is difficult to fathom why a court would opt to ignore completely (if, indeed, called to its attention at all) or to embark upon a series of mental gyrations and gymnastics to strike down such clear definitional statements in favor of a narrow, even harsh, interpretation. Perhaps the answer lies in the apparent fact that the arguments herein were never presented in Goldwire and that plaintiffs counsel in Colenzo was more concerned on appeal with arguing the asserted overall unconstitutionality of the "No-fault” law (a claim which he had not made previously and which was rejected by the court).
Even if unwarranted and unnecessary comparisons of the two subparagraphs aforesaid are undertaken, it must be remembered that the lawmakers were primarily concerned with affording maximum first-party benefits to injured persons no matter the fault. They carefully and meticulously spelled out all of the reimbursable reasonable and necessary expenses and losses under basic economic loss, including items clearly not "medical” in nature or application. The legislators undoubtedly were acquainted with the usual reluctance of insurance companies to make immediate payments, even under legislative compulsion, unless plainly delineated guidelines for such payments were set forth by category and subject (Insurance *208 Law, § 671, subd 1). However, as to the meeting of a monetary threshold for a "serious injury” as a reasonable and customary charge, and realizing that this would be an ultimate question for determination not by insurance companies, but "by a jury or Judge without a jury” (Montgomery v Daniels, supra, p 66), the Legislature was content to employ the broad terminology of "reasonable and customary charges for medical * * * services necessarily performed”. The language did not constitute an elimination of any particular medical items, but an expanded inclusion of any particular services that could reasonably be classified as necessary medical services.
Nor did the legislators, in my view, have any unexpressed intention to forcibly prevent prospective plaintiffs from reaching the over $500 threshold by specifically limiting the categories of medical services includable in the threshold consideration. The primary purpose of this remedial legislation was to afford rapid payment of first-party benefits without regard to fault, not to hamper unduly potential litigation for recovery for non-economic loss where warranted. If the Legislature felt impelled to draft a law that would serve to impede many more plaintiffs from bringing suit for "pain and suffering”, they could readily have accomplished this aim by merely initially raising the threshold amount to $1,000, $2,000 or more (as is presently under consideration at this 1976 legislative session). Certainly, there is no need for the courts to legislate in this field by gratuitously imposing restrictions on prospective plaintiffs far beyond the legislative intent, as the courts in the Fourth Department apparently have attempted to do by excluding physical therapy from threshold attainment.
There is no valid reason why a technical or restrictive meaning should be given to the words "medical services”. And I do not agree with my Fourth Department brethren that a legislative or bill drafting error may have been made in this connection or that the courts should meekly accept the suggestion that one has been made. As stated, the legislative design is fully comprehensible and is shrewdly calculated to accomplish the purposes intended.
In addition, at least one duo of legal commentators have expressed a viewpoint similar to that of this court as to the inclusion of physical therapy charges in the threshold sum (see Shayne and Dachs, Economics and "No Fault”, NYLJ, Aug 26, 1975, p 2, cols 3-4). Moreover, these same writers call *209 attention to an informal opinion of the Insurance Department of the State of New York which stated that chiropractic services were includable in reaching the over $500 threshold (cols 1-2, 4). These authors say that they can see no distinction between chiropractic services and physiotherapy services. Nor can I!
For the reasons stated, at the least, physical therapy treatments should not be stricken from the minimal threshold calculations as a matter of law, but should be reserved, if in serious issue, for a trier of such facts, who may then, upon proper proof, determine the necessity, applicability and reasonable cost of the particular physical therapy prescribed and administered for the particular injury involved. In the case before me, the medical opinion of plaintiff’s doctor, an orthopedist of some 30 years’ experience — that the application of physical therapy is absolutely fundamental in the treatment of cervical sprain cases such as plaintiff’s — should be considered by a jury or Judge to determine whether the charges for the physiotherapy services were reasonable, customary and necessarily performed. Certainly, there is a present legal necessity not to foreclose a prospective plaintiff’s rights in this regard before a final appellate review of the entire subject.
Finally, however, in the instant case, there also exists a triable factual question, which has been clearly raised by the submitted papers and exhibits, as to whether there is a "serious injury” by virtue of a permanent partial disability. On this issue alone, and without regard to any determination as to the applicability of physical therapy in attaining the statutorily prescribed threshold, the motion to dismiss the complaint would normally be denied (see, surprisingly, Colenzo v Kernan, supra, p 810). Nevertheless, the present complaint is admittedly defective in that it was drawn in the early period of the "no-fault” law and contains no specific averment of "serious injury” (see CPLR 3016, subd [g]).
Accordingly, the motion to dismiss is granted, but with leave to plaintiff to serve an amended complaint in proper form, within 10 days after service of a copy of the order to be entered hereon, with notice of entry.